Filed 1/27/22  P. v. Sweet CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091282 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE001579) |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| DEANNA LEIA SWEET, | |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

It is ordered that the nonpublished opinion filed herein on January 4, 2022, be modified as follows:

On page 8, the fifth sentence in the paragraph under the heading "Analysis," that reads "We have the benefit of photographs and a video in the record that illustrate far better than testimony the relative positions of the two cars" is modified to read "We have the benefit of the video in the record that illustrates far better than testimony the relative positions of the two cars."

There is no change in judgment.

1

Respondent's petition for rehearing is denied.


BY THE COURT:


          /s/
RAYE, P. J.


          /s/
MURRAY, J.


          /s/
HOCH, J.

Filed 1/4/22  P. v. Sweet CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C091282 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE001579) |
| v. | |
| DEANNA LEIA SWEET, | |
| Defendant and Appellant. | |

Defendant Deanna Leia Sweet was found guilty of driving under the influence. Before trial, defendant moved to suppress evidence found after the police officer contacted her in her car.  The trial court denied the motion, finding the contact was consensual.  Defendant appeals, contending the officer detained her illegally.  We reverse, concluding the circumstances rendered the contact nonconsensual and there was no reasonable suspicion of criminal activity.

BACKGROUND

In the evening of January 24, 2018, Fulton-El Camino Park Police Sergeant Taylor Magaziner followed a car after he saw what he thought might be a drug deal with the

1

driver. After the car stopped, Sergeant Magaziner got out of his patrol car and spoke with the driver, whom he later identified as defendant. The car smelled like alcohol, defendant stumbled out of the car, and a can of beer fell out of the car. Defendant later failed several field sobriety tests and then submitted to a blood test that showed a blood-alcohol concentration of 0.15 percent.

Defendant was charged with driving under the influence (DUI) of an alcoholic beverage within 10 years of three prior convictions for similar offenses (Veh. Code, §§ 23152, subd. (a), 23550), driving with a blood-alcohol content in excess of 0.08 percent within 10 years of three prior convictions for similar offenses (Veh. Code, §§ 23152, subd. (b), 23550), and misdemeanor driving on a suspended or revoked license after a DUI conviction (Veh. Code, § 14601.2, subd. (a)).

Defendant filed a motion to suppress all evidence discovered after Sergeant Magaziner approached her car. On October 25, 2018, the trial court held a hearing on the motion, where Sergeant Magaziner was the only witness to testify. He said it was dark and raining when he was driving his patrol car around 6:45 p.m. on January 24, 2018. As he was driving by a liquor store parking lot he noticed a man outside the driver's window of a car "making animated movements" towards the car's driver, but there was no physical contact. Sergeant Magaziner understood these gestures to indicate they were "communicating," maybe "an argument, altercation, or some sort of excitement between" the two people. The man saw Sergeant Magaziner and walked away, and the driver looked back towards Sergeant Magaziner, who noticed the driver was female. From this behavior, his understanding of the interaction then changed to believing it was a possible drug deal. He testified he believed both individuals saw his "marked patrol vehicle . . . so it may not have been me they saw, but the vehicle."

Sergeant Magaziner drove into the parking lot and as he passed the car, the car backed out of the parking spot and headed in the opposite direction of the patrol car around a corner to the rear of the liquor store. Sergeant Magaziner temporarily lost sight

2

of the car as he turned around in the parking lot and then followed the car around the corner, seeing it come to a stop over a couple parking stalls in what he described as a "jerky-type" stop. Sergeant Magaziner parked his patrol car "behind the vehicle by approximately seven feet, nosed in behind it." He confirmed that the front of his patrol car was "to the rear of the suspect vehicle." He also turned on the patrol car's rear lights and "forward-facing spot lamp," but had not activated the siren or emergency lights yet.

After turning on the car's rear lights and spot lamp, Sergeant Magaziner walked to the driver of the car, whom he identified in court as defendant, and asked how she was doing. He confirmed he had not made the determination she was under the influence of alcohol before this, but initiated the contact because of the way she drove and parked across the lines, and his "curiosity from the contact with the individual outside the car." Once he spoke with defendant, he "could smell the odor of alcoholic beverages" and noticed defendant had "slurred speech and showed signs of someone who could have been under the influence of alcohol." After a records check indicating defendant did not have a valid driver's license, Sergeant Magaziner activated his overhead emergency lights because he "[a]t that point . . . believe[d] she was under the influence of alcohol while driving." The court then viewed a video from another officer's patrol car that showed the position of defendant's and Sergeant Magaziner's cars.

The trial court denied the motion to suppress. It found that though defendant's activity before Sergeant Magaziner contacted her was "unusual or peculiar to a law enforcement officer," and "mildly of interest," he never detained her: "[H]e doesn't pull in behind her, activate his lights, tell her she can't move; he parks in a position—and you can see it more on the video—where, if she wanted to, I suppose, she could have just driven away, and she would have been entitled, I suppose, to have done that. [¶] He gets out, makes contact. There is no video, but he says, hey, is everything going okay? What's going on? And at the point they make contact, he immediately notices all the objective signs; alcohol on her breath, slurred speech, and he goes back to his car because

3

he has made the determination at this point that he's going to turn this into a DUI investigation. [¶] . . . [¶] Law enforcement can walk up and talk to anybody on the planet they want to, just like you and I can. You don't have to talk to them. You don't have to subject yourself to any authority. If you want to drive away, you're entitled to do that."

Defendant's counsel asserted Sergeant Magaziner parked behind defendant, which made the encounter nonconsensual. The trial court rewatched the video and stated: "I don't find the police officer's car was parked directly—in fact, it's clearly not parked directly behind her vehicle; it is offset to it. [¶] And . . . there is a good deal of distance between that wall and the front end of her vehicle."

On October 30, 2019, a jury found defendant guilty on all counts and the trial court found true defendant's three prior DUI convictions. On December 2, 2019, the trial court sentenced defendant to 16 months (low term) for the DUI conviction but stayed execution of the sentence pending successful completion of five years of formal probation, and imposed but stayed sentences on the remaining counts under Penal Code section 654. The court also imposed the minimum fines and fees, including a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), a $300 imposed and stayed probation revocation fine (Pen. Code, § 1202.44), three $40 court security fees (Pen. Code, § 1465.8, subd. (a)(1)), and three $30 court facility fees (Gov. Code, § 70373).

DISCUSSION

Defendant argues she was nonconsensually detained without reasonable suspicion that she was involved in any criminal activity, so the evidence discovered during and after the encounter must be suppressed. The People counter the interaction was consensual because defendant was not blocked, leaving her free to leave, and even if it

4

was a detention, there was reasonable suspicion of a crime.  We conclude defendant has the better argument.[1]

I

*Was There a Detention?*

**Legal Standards**

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty.  [Citations.]  Our present inquiry concerns the distinction between consensual encounters and detentions.  Consensual encounters do not trigger Fourth Amendment scrutiny.  [Citation.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

An officer simply approaching an individual and asking a few questions does not constitute a detention and will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.  (*Florida v. Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 398].)  An encounter remains consensual as long as a reasonable person would feel free " 'to disregard the police and go about his business.' " (*Ibid*.)  A consensual encounter transforms into a detention when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty.  (*Ibid.*)

To determine whether a particular encounter constitutes a detention, courts must consider all the surrounding circumstances to ascertain whether the police conduct would have communicated to a reasonable person that he or she was not free to decline the officer's requests or to terminate the encounter.  (*Florida v. Bostick, supra*, 501 U.S. at

---

[1] Reversing on this issue, we do not address defendant's additional argument challenging the fines and fees imposed.

5

p. 439.)  This test assesses the coercive effect of the police conduct as a whole, rather than emphasizing particular details of that conduct in isolation.  (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 572].)  The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred.  (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460.)

In evaluating whether the contact between defendant and Sergeant Magaziner was consensual or a detention, "we view the record in the light most favorable to the trial court's ruling and defer to its findings of historical fact, whether express or implied, if they are supported by substantial evidence.  We then decide for ourselves what legal principles are relevant, independently apply them to the historical facts, and determine as a matter of law whether there has been an unreasonable search and/or seizure."  (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922; accord, *People v. Glaser* (1995) 11 Cal.4th 354, 362.)

There are several California cases that elucidate these principles in circumstances similar to the present case.  In *People v. Perez* (1989) 211 Cal.App.3d 1492, an officer parked "head on" with the defendant's car but "left plenty of room for [the] defendant to drive away," activated the patrol car's spotlights, but not the emergency lights, walked up to the car and tapped on the window with his flashlight, shined the flashlight into the car, and asked the defendant to roll down the windows; the defendant complied and the officer noticed signs of intoxication.  (*Id.* at pp. 1494-1495.)  The appellate court found there was no detention because, "[w]hile the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention."  (*Id.* at p. 1496.)

In *People v. Kidd* (2019) 36 Cal.App.5th 12, an officer passed a car with its fog lights on late one night, "made a U-turn, and parked about 10 feet behind the car, which had another car parked about 10 feet in front of it.  The officer pointed two spotlights—

6

one by his driver's side mirror, the other on the overhead light bar—at the occupied car, and then exited his patrol vehicle." (*Id*. at p. 15.) The appellate court found the officer detained the driver because, though he did not block the car in and did not use emergency lights, "motorists are trained to yield immediately when a law enforcement vehicle pulls in behind them and turns on its lights. Regardless of the color of the lights the officer turned on, a reasonable person in [the defendant's] circumstances 'would expect that if he drove off, the officer would respond by following with red light on and siren sounding . . . .' [Citation.] Moreover, any ambiguity was removed when the officer more or less immediately exited his patrol vehicle and began to approach [the defendant's] car. Although the officer's approach was, according to record, not made in a particularly aggressive or intimidating manner, a reasonable person in [the defendant's] circumstances would not have felt free to leave." (*Id*. at pp. 21-22.)

In *People v. Tacardon* (2020) 53 Cal.App.5th 89, review granted October 14, 2020, S264219, an officer drove by a car with smoke coming out of its windows, made a U-turn, parked 15 to 20 feet behind the car, got out of his patrol car and approached the car, used his flashlight to look into the car, and then spoke with the driver. (*Id*. at pp. 92-93.) A different panel of this court found the driver had not been detained because the car had not been blocked, nor did the fact the officer "activated the patrol car's spotlight, and approached the vehicle on foot, manifest a sufficient show of police authority to constitute a detention." (*Id*. at p. 99.) We disagreed with *Kidd*, which had substantially similar facts, concluding "although a person whose vehicle is illuminated by police spotlights at night may well feel he or she is 'the object of official scrutiny, such directed scrutiny does not amount to a detention.' " (*Id*. at pp. 99-100, citing *People v. Perez, supra*, 211 Cal.App.3d at p. 1496.)

Finally, in *People v. Kasrawi* (2021) 65 Cal.App.5th 751, review granted September 1, 2021, S270040, an officer saw the defendant walk to his car at 4:00 a.m. on a residential street, turned on the patrol car's spotlight "flooding [the defendant] with a

7

bright light," and pulled up behind and to the side of the defendant's car. (*Id*. at pp. 754-755.) The defendant stopped getting into his car and faced the officer, who immediately exited the patrol car and asked the man where he was coming from. (*Id*. at p. 755.) The appellate court found the spotlight alone was insufficient for a detention, but that coupled with the proximity of the two cars, the officer's immediate exit and immediate advance, and his immediate questions of the defendant rendered the confrontation nonconsensual. (*Id*. at pp. 759, 760.)

These cases confirm the interaction must be analyzed holistically, looking at all the circumstances. But there are some bright lines. Blocking a car's egress will constitute a detention. (*People v. Tacardon, supra*, 53 Cal.App.5th at p. 98, review granted.) So will using emergency lights. (*Ibid*.) But using a spotlight by itself is not a detention without more. (*People v. Kasrawi, supra*, 65 Cal.App.5th at pp. 758-759, review granted.)

**Analysis**

Though our review of the record is deferential, the dispositive facts in this case are undisputed. Defendant was parked and upon noticing Sergeant Magaziner's patrol car decided to move her car. Sergeant Magaziner followed her around the corner to the back of the store where he found her parked close to the building. We need not speculate or rely on verbal descriptions of the position of Sergeant Magaziner's patrol car in relationship to defendant's car. We have the benefit of photographs and a video in the record that illustrate far better than testimony the relative positions of the two cars. Sergeant Magaziner positioned his car so as to make it very difficult, though perhaps not impossible, for defendant to move her car without hitting the wall in front of her or Sergeant Magaziner's car behind. The trial court may have thought, "he parks in a position—and you can see it more on the video—where, if she wants to, I suppose, she could have just driven away." Notwithstanding the trial court's supposition, any reasonable interpretation of the video images belies this nonchalance. Faced with a

8

uniformed officer in a marked patrol car with a spotlight shining upon them, no law-abiding citizen would have thought that casually driving away was an option under the circumstances. Impossibility of egress is not the standard that applies in assessing whether a person believes he or she is free to leave. It would have been very difficult for defendant to back up without hitting the patrol car or the approaching Sergeant Magaziner, and going forward would have required a sharp turn to avoid the wall in front of her car.

In addition to the spotlight, partial obstruction, and walking to her car, defendant knew Sergeant Magaziner followed her from the prior lot. Since she already tried to avoid him once and was unsuccessful, in addition to the other factors, "[a]ny reasonable person in a similar situation would expect that if he drove off, the officer would respond by following with red light on and siren sounding in order to accomplish control of the individual." (*People v. Bailey* (1985) 176 Cal.App.3d 402, 406.)

This case therefore involves a stronger show of authority than *Tacardon*, *Kidd*, *Perez*, and *Kasrawi*. The officers in both *Tacardon* and *Kidd* made U-turns. However, there was no evidence the drivers originally saw the officer, nor did the drivers then leave their parking spot, repark, and then have the officer park behind them again. Under these circumstances we find Sergeant Magaziner detained defendant.

II

*Was the Detention Legal?*

We must now determine whether Sergeant Magaziner's detention of defendant was legal. The trial court did not analyze this issue, instead finding a consensual encounter. The People assert if there was a detention it was legal because there was a reasonable suspicion of either: (1) domestic violence, (2) a drug transaction, and/or (3) driving under the influence. We disagree.

"[A]n officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law." (*People v. Wells* (2006) 38 Cal.4th 1078, 1082.) The

9

subjective suspicion must be "objectively reasonable" and supported by "specific, articulable facts." (*Id*. at p. 1083.) "The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) "We exercise independent judgment to determine the legality of the search or seizure, but we defer to the trial court's factual findings supported by substantial evidence." (*People v. Mendoza* (2020) 44 Cal.App.5th 1044, 1051.)

Sergeant Magaziner never testified to having a subjective suspicion of criminal activity before approaching defendant. He said he contacted her because of the way she drove and parked and his "curiosity" from her discussion with the man before. As the trial court described it, defendant's behavior was "unusual or peculiar to a law enforcement officer" and "mildly of interest." But this only evidences a hunch insufficient to support a reasonable suspicion.

The stop was also objectively unreasonable. The man's "animated movements" towards defendant did not include any physical contact and were so vague that Sergeant Magaziner could only definitively conclude they were "communicating." This could not support a reasonable suspicion of any past or future violence. There were also no specific facts of a potential drug deal, only the observation a man was speaking to the driver and then walked away when he saw the patrol car. Avoiding police contact cannot justify a detention. (*People v. Aldridge* (1984) 35 Cal.3d 473, 478 ["the suggestion that an apparent effort to avoid a police officer may justify a detention has been refuted in numerous decisions of this court"].) As for a suspicion defendant was driving under the influence, Sergeant Magaziner did not believe she was under the influence of alcohol until after he spoke with her, smelled alcohol, and saw she looked intoxicated. Before this point, he had only seen her coming to a "jerky-stop" across multiple lines, which violates no laws. Though she was near a liquor store, Sergeant Magaziner did not say he saw her drinking, holding an alcoholic drink, or entering the store to purchase anything.

10

The People provide no legal support, and we have found none, indicating such minimal evidence could create a reasonable suspicion of driving while under the influence. (See *Arburn v. Department of Motor Vehicles* (2007) 151 Cal.App.4th 1480, 1484-1485 [summarizing cases finding weaving between lanes for some distance sufficient for reasonable suspicion of driving under the influence].)

Under the totality of the circumstances, the evidence indicates Sergeant Magaziner investigated defendant based on a curiosity, which lead to her detainment. We therefore conclude Sergeant Magaziner's detention of defendant was unlawful.

## DISPOSITION

The judgment is reversed and the case remanded to the trial court with instructions to vacate its order denying the motion to suppress, enter a new order granting the motion to suppress, and conduct further proceedings in accordance with the law.


        /s/
        RAYE, P. J.



We concur:



    /s/
MURRAY, J.



    /s/
HOCH, J.


11